JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKELY LEWIS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ARVATO DIGITAL SERVICES, LLC; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 5:24-cv-02693-AB-SHK<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND and DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

Plaintiff Markely Lewis ("Plaintiff") filed a Complaint ("Compl.," Dkt. No. 1, Ex. A) in San Bernardino County Superior Court alleging that Defendant Arvato Digital Services, LLC ("Defendant") violated various California labor laws. *Id*. Defendant removed the action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). Now before the Court is Plaintiff's Motion for Remand ("Motion," Dkt. No. 10). Defendant filed an opposition ("Opp'n," Dkt. No. 14), and Plaintiff filed a reply (Dkt. No. 15). The Court took the matter under submission on February 19, 2025. Also before the Court is Defendant's Motion to Compel Arbitration (Dkt. No. 21) and a corresponding opposition and reply. For the following reasons, the Court **GRANTS** Plaintiff's Motion for Remand and **DENIES** Defendant's Motion to Compel Arbitration as moot.

## I. BACKGROUND

Plaintiff filed this putative class action Complaint on September 18, 2024. *See* Compl. The Complaint alleges the following eight causes of action against Defendant: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (5) Failure to indemnify Necessary Business Expenses; (6) Failure to Timely Pay Final Wages at Termination; (7) Failure to Provide Accurate Itemized Wage Statements; and (8) Unfair Business Practices. Compl. ¶¶ 30-94. The Complaint alleges that Plaintiff and the putative class members were not paid all wages and expenses, provided meal and rest periods, issued accurate wage statements, or timely paid wages at termination due to Defendant's policy and practice of noncompliance. Compl. ¶¶ 15-20. On November 20, 2024, Defendant removed the action to this Court under CAFA. *See* (Notice of Removal ("NOR,") Dkt. No. 1. Plaintiff subsequently filed this Motion.

## II. LEGAL STANDARD

### A. Removal

A defendant may remove a civil action filed in state court to federal court when the federal district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). "A suit may be removed to federal court under 28 U.S.C. § 1441(a) only if it could have been brought there originally." *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987).

A removing defendant bears the burden of establishing federal jurisdiction. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). To meet this burden as to the amount in controversy, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (citing 28 U.S.C. § 1446(c)(2)(B)).

Only "when the plaintiff contests, or the court questions, the defendant's allegation" must the defendant submit evidence to establish the amount in controversy

by a preponderance of the evidence. *Id.* at 89 (citing 28 U.S.C. § 1446(c)(2)(B)); *see Ibarra*, 775 F.3d at 1195; *Harris v. KM Industrial, Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) ("When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold."). The Court should "treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits." *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969); *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) ("The district court did not err in construing Petsmart's opposition as an amendment to its notice of removal."). The plaintiff may submit evidence to the contrary. *Ibarra*, 775 F.3d at 1198 (citing *Dart Cherokee*, 574 U.S. at 89). "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Once "both sides submit proof . . . the court then decides where the preponderance lies." *Ibarra*, 775 F.3d at 1198. "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197.

## B. Jurisdiction under Class Action Fairness Act (CAFA)

The Class Action Fairness Act ("CAFA") gives federal courts jurisdiction over specified class actions if (1) the parties are minimally diverse, (2) the putative class has more than 100 members, and (3) and the aggregated amount in controversy exceeds $5 million. 28 U.S.C § 1332(d)(2). "[N]o antiremoval presumption attends cases invoking CAFA." *Bridewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 929 (9th Cir. 2015). In fact, "Congress passed CAFA with the 'overall intent . . . to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications.'" *Brinkley v. Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017) (quoting S. Rep. No. 109 14, 35 (2005)).

## III. DISCUSSION

Plaintiff argues that this action should be remanded to San Bernardino County Superior Court because removal was untimely or because Defendant failed to show the action meets CAFA's amount-in-controversy requirement. Defendant opposes both points.

### a. Removal Was Timely

A notice of removal must "be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . ." 28 U.S.C. § 1446(b). The United States Supreme Court construes § 1446(b) to mean that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, **but not by mere receipt of the complaint unattended by any formal service**." *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 347-48 (1999) (holding that, where defendant was faxed a courtesy copy of a *filed* complaint, defendant's time to remove is not triggered) (emphasis added). Here, Plaintiff argues that removal was untimely because Plaintiff notified Defendant of the Complaint by email before executing formal service. Mot. at 7. This argument is contrary to the holding in *Murphy Bros*. and unavailing because the "30-day removal clock only starts ticking once the defendant has been served." *Casola v. Dexcom, Inc.*, 98 F.4th 947, 961 n.15 (9th Cir. 2024).

The California Code of Civil Procedure allows for five basic methods of service, including service by mail with acknowledgment of receipt, but not including email. *See* Cal. Civ. Proc. Code § 415.30. To execute service by email, a party must obtain special court authorization. *See Fabric Selection, Inc. v. Benedict's Goods, LLC*, No. CV 23-7168-JFW(BFMx), 2023 U.S. Dist. LEXIS 242208, at *3 (C.D. Cal. Dec. 15, 2023) (declining to authorize email service). Service of a summons by mail is "deemed complete on the date a written acknowledgment of receipt of summons is

4

1  executed, if such acknowledgment thereafter is returned to the sender." Cal. Civ. Proc.
2  Code § 415.30(c). In the instant case, Defendant executed a written acknowledgment
3  of receipt of the mailed summons on November 20, 2024. *See* Declaration of Orlando
4  Arellano, Opp'n Ex. A ("Arellano Decl."). Therefore, Defendant's deadline to remove
5  the case was 30 days later: December 20, 2024. Defendant timely removed the lawsuit
6  on December 20, 2024.

### b. Amount in Controversy

Plaintiff argues that the Court lacks subject matter jurisdiction because Defendants cannot demonstrate that the amount in controversy exceeds $5 million as required by CAFA. In assessing the amount in controversy, courts first look to the allegations in the complaint. *Ibarra*, 775 F.3d at 1197. Courts can accept a plaintiff's good faith allegation of the amount in controversy. *Id*. But if the "plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." 28 U.S.C. § 1446(c)(2)(A); *Dart Cherokee*, 574 U.S. at 84. "When a plaintiff contests the amount in controversy allegation, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'" *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992 (2022) (quoting *Dart Cherokee*, 574 U.S. at 88). In CAFA cases, there is no presumption against removal. Rather, "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant." *Id*. at 993 (citations omitted).

Here, the Complaint does not allege an amount in controversy. *See generally* Compl. In the Notice of Removal, Defendant alleges that the amount in controversy is approximately $5,192,500. *See* NOR at 18. Defendant has relied on the Declaration of Sofia Cruz, Senior Human Resource Manager at Arvato in Ontario, California, to support its calculations. *See* Dkt. No. 1-2 ("Cruz Decl."). Based on Ms. Cruz's declarations, Defendant asserts that 297 class members worked approximately 32,000 workweeks and earned an average hourly rate of $22.98, and an average overtime rate

of $34.46. *See* NOR ¶ 27, 32. Defendant also asserts that 118 employees separated from the company between September 18, 2021, and December 18, 2024, and that Defendant issued more than 4,600 weekly wage statements to 171 Putative Class Members within the one-year statute of limitations. *See* NOR ¶ 44, 46. Based on the evidence discussed in that declaration, Defendant submits figures regarding the damages estimated for Plaintiff's claims:

| Claim | Amount in Controversy |
|---|---|
| Unpaid Minimum Wages | $1,151,000 |
| Unpaid Overtime Wages | $1,100,000 |
| Unpaid Break Premiums | $735,360 |
| Unpaid Expense Reimbursement | $64,000 |
| Waiting Time Penalties | $650,000 |
| Wage Statement Penalties | $454,000 |
| Attorneys' Fees | $1,038,500 |
| **Total** | **$5,192,500** |

NOR at 18. The Court notes that Plaintiff does not provide evidence to rebut Defendant's showing.

### i. Defendant's Calculations for the Unpaid Minimum Wage Claim Merit Reduction

Section 1194 provides that "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Cal. Lab. Code § 1194. Further, on unpaid minimum wage claims, "an employee shall be entitled to recover liquidated damages in an amount equal to the [minimum] wages unlawfully unpaid and interest thereon." *Id.* § 1194.2; *see also*, *Brewer v. Premier Golf Properties*, 168 Cal.App.4th 1243, 1253 n.8 (2008). Thus, damages for an unpaid minimum wage claim "would be California's minimum wage multiplied by the number of unpaid hours worked, and

6

then doubled to include liquidated damages." *Vasquez v. Randstad US, L.P.*, No. 17-CV-04342-EMC, 2018 WL 327451, at *4 (N.D. Cal. Jan. 9, 2018).

    Plaintiff argues that Defendant's 20% violation rate—the assumption of one (1) hour of unpaid regular wages per workweek—is unreasonable because it assumes that 100% of the class was subject to the minimum wage violations. Mot. at 15. Defendant argues that the one-hour estimate is reasonable because Plaintiff alleged the failure to pay wages occurred "[t]hroughout the statutory period" and was due to a "policy and practice of not paying Plaintiff and the Class for all hours worked" (Compl. at ¶ 14-15). Opp'n at 12. Plaintiff, too, acknowledged that it used "fairly broad language in the Complaint" such as "systematic, company-wide policy and practice," but downplayed the breadth by asserting, "[l]anguage can be purposefully broad without being definitively all-inclusive." Mot. at 15. However, the Court finds Defendant's 20% violation rate reasonable due to the broad allegations in the Complaint. Where plaintiffs have not alleged subclasses or otherwise drawn relevant distinctions between class members and alleged violations resulting from a "policy and practice," courts have found a 20% violation rate reasonable. *Rapisura v. BMW of N. Am., LLC*, No. 2:22-CV-00455 WBS AC, 2022 WL 1557001, at *2 (E.D. Cal. May 17, 2022) (quoting *Cabrera v. South Valley Almond Co., LLC*, No. 1:21-cv-00748-AWI-JLT, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021)); *see also Cavada v. Inter-Cont'l Hotel Grp., Inc.*, No. 19cv1675-GPC(BLM), 2019 WL 5677846, at *5 (S.D. Cal. Nov. 1, 2019) (determining it was reasonable for the defendant to find two hours of unpaid overtime per week based on the complaint's policy and practice language).

    Defendant assigned the average hourly rate of $22.98 to the estimated one (1) hour of unpaid regular wages per week. Defendant calculated that this would plausibly place $735,000 in controversy without adding liquidated damages ($22.98 x 1 hour / week x 32,000 workweeks). However, the Defendant does not explain why it uses the "average hourly rate" to calculate the minimum wage damages at stake in this claim. In 2020, California's minimum wage was $13.00 per hour, in 2021 it was $14.00, in

2022 it was $15.00, in 2023 it was $15.50, and in 2024 it was $16.00—all below Defendant's $22.98. *See* Cal. Dep't. of Indus. Rel. Lab. Comm'r Office, Minimum Wage Frequently Asked Questions, https://www.dir.ca.gov/dlse/faq_minimumwage.htm (last visited May 21, 2025). The Court is unable to find a reasonable factual basis for applying the $22.98 hourly rate to this claim.

Where a Defendant uses unreasonable assumptions, but a reasonable assumption is available, the Ninth Circuit instructs courts to adjust the calculation accordingly. *Jauregui*, 28 F.4th at 996 (declining to zero-out a claim for failure to use reasonable minimum wage figures because when "a defendant's assumption is rejected because a different, better assumption is identified" courts "should consider the claim under the better assumption"). Here, the average minimum wage (rounded up to the nearest dollar) over the relevant period is $15.00, which reasonably places **$480,000** in controversy ($15.00 x 1 hour / week x 32,000 workweeks). *Id*.

In calculating liquidated damages for every such hour, Defendant applied a more conservative assumption, using the lowest minimum wage rate in the class to estimate that Plaintiff has placed at least $416,000 in controversy ($13.00 x 1 hour per week x 32,000 workweeks). However, because liquidated damages are calculated by doubling the applicable unpaid minimum wage, the Court will double the previous calculation instead of using the lowest minimum wage rate: ($15.00 x 1 hour / week x 32,000 workweeks). Accordingly, the Court reduces Defendant's calculation of $1,151,360 in controversy for the minimum wage claim to **$960,000** including liquidated damages.

### ii. Defendant's Calculations for Unpaid Overtime Were Reasonable

Plaintiff next argues that counting both one hour of unpaid overtime wages per week and one hour of unpaid regular hours per week amounts to illogical double damages. Plaintiff asserts it is unreasonable to assume "that every single employee

8

uniformly worked exactly one uncompensated hour at their base wage and exactly one hour of uncompensated overtime, in every single week." Mot. at 14. Defendant does not directly address this argument in its Opposition, but cites to *Kastler v. Oh My Green, Inc.*, No. 19-CV-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) where the court accepted the assumptions of one hour of unpaid overtime and one hour of unpaid regular working time for the entire class. Opp'n at 13. In *Kastler* the court found these assumptions reasonable because the plaintiff "fail[ed] to include specific allegations" about the nature of the unpaid overtime hours and alleged a pattern and practice of failing to pay overtime wages. *Kastler*, 2019 WL 5536198 at *4. However, neither *Kastler* nor the other two cases Defendant cited addressed the issue of double counting regular and overtime hours.

It is true that an employee "cannot be awarded double recovery" for the same unpaid time. *Vasquez v. Randstad US, L.P.*, No. 17-CV-04342-EMC, 2018 WL 327451, at *3 (N.D. Cal. Jan. 9, 2018). If an employee worked eight hours per day, five days a week, and spent an unpaid hour in a security line that week, then that hour would go toward overtime damages, not minimum wage damages. *Id*. Here, Plaintiff alleges generally that "throughout the statutory period, Defendants maintained a policy and practice of not paying Plaintiff and the Class for all hours worked." Compl. at ¶ 15. While Plaintiff's minimum wage and overtime wage claims appear to be premised on largely the same conduct, such as the allegation that Defendant did not pay the class for time spent waiting in security check lines, Plaintiff does not cabin the violative conduct and instead gives non-exhaustive examples. *Id*. Furthermore, Plaintiff alleges that Defendant failed to factor non-discretionary incentives into its accounting for overtime compensation, resulting in underpayment, which is conduct distinct to the overtime claim. *Id*. Therefore, it is reasonable to assume Plaintiff is alleging different instances of unpaid time for the two claims because the Complaint includes a distinct reason for unpaid overtime compensation (failure to account for incentives) and does not specify the nature of the unpaid work. *See, e.g., Rapisura v.*

*BMW of N. Am., Ltd. Liab. Co.*, No. 2:22-CV-00455 WBS AC, 2022 WL 1557001, at *3 (E.D. Cal. May 17, 2022) (rejecting a double-counting argument because plaintiff alleged "separate claims for minimum wages and overtime wages and state[d] different theories for these claims"); *see also Cabrera v. S. Valley Almond Co., LLC*, No. 121CV00748AWIJLT, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021) (finding it reasonable to assume that all putative class members were subject to an hour of unpaid overtime and an hour of unpaid minimum wages where plaintiff "does not allege subclasses" and states violations were "due to policies and/or practices"). The instant case is distinct from that of *Vasquez* where both the overtime and minimum wage claims were premised on the same 2.5 hours of unpaid meal breaks. *Vasquez*, 2018 WL 327451 at *3. Here, the complaint is broad enough, with certain allegations distinct to the overtime claim, that it is reasonable to assume one hour of unpaid time for each claim without risking double damages.

Accordingly, Defendant's calculation of **$1,100,000** ($34.46 average hourly overtime wage rate x 1 hour of unpaid overtime/week x 32,000 workweeks) in controversy for the overtime claim is reasonable.

### iii. Defendant's Calculations for the Third and Fourth Cause of Action for Meal Period and Rest Break Premiums Were Unreasonable

Plaintiff asserts that Defendant's assumption of one missed meal period per week or one missed rest break per week for *each* class member was unreasonable because the Complaint alleged those violations occurred "sometimes, but not always." Compl. ¶¶ 16, 17. Plaintiff challenged the factual basis for the assumption that "all employees" were denied one meal or rest break per week because Defendant did not provide information to support this conclusion such as average shift lengths, or the types of shifts worked. Mot. at 17. The Ninth Circuit has ruled that when a plaintiff "contest[s] the truth of the defendant's factual allegations," the defendant has the "burden of supporting its jurisdictional allegations with competent proof." *Harris*, 980

F.3d at 700-01 (cleaned up). Nevertheless, Defendant did not directly respond to Plaintiff's argument or elaborate on its basis for asserting that all employees would be reasonably implicated by the rest and meal break claims. Defendant merely cited to district cases decided before *Harris*. Opp'n at 14.

As Plaintiff pointed out, while unpaid wages would not typically be tracked in company records, information relevant to meal and rest break claims such as shifts worked, break eligibility, and breaks taken would be recorded, making sub-classes for these two claims more readily discernable. Despite the availability of this type of information, the defendant in *Harris* "offered no proof that all" class members "worked sufficient shifts during the [relevant] workweeks to qualify them for meal and rest periods." *Harris*, 980 F.3d at 702. The Ninth Circuit therefore found that the defendant had not met its burden to show that rest and meal break claims could be reasonably assumed to apply to 100% of the class by a preponderance of the evidence. *Id*.

Here, Defendant Arvato represented in its initial Notice of Removal that it "typically hired and scheduled these employees to work five days per week and eight hours per day." Cruz Decl. ¶ 8. Though Defendant had the opportunity to do so, it did not provide any more information or argument to explain its assumption that all class members would be subject to the meal and rest break claims following Plaintiff's factual challenge. *See* Opp'n at 9-11, 14. Though a declaration as to Defendant's typical hiring and scheduling practices is more than nothing, the Court nevertheless finds that where a plaintiff alleged break violations occurred "sometimes but not always," providing nothing more than a vague assertion about scheduling practices does not support the assumption that *every* employee in the class worked sufficient shifts every week for four years to qualify for these breaks. *See, e.g. Davis v. Empire Chauffeur Serv., Ltd.*, No. 223CV07968MEMFSSC, 2024 WL 1217377, at *6 (C.D. Cal. Mar. 18, 2024) (finding phrases like "policy and practice," "at times," and "some of them" cannot "reasonably be read as 100% of employees"); *Harris*, 980 F.3d at 702

11

(affirming remand because "relying on the factually unsupported and unreasonable assumption that the 442 Hourly Employee Class members worked shifts long enough to entitle them to meal and rest periods would exaggerate the amount in controversy"). At minimum, Defendant ought to know the rough proportion of the class members that was full-time and part-time, and if all class members were indeed full-time employees, the Defendant could assert as much. *Cf. Lopez v. Adidas Am., Inc.*, No. 221CV00447MCSPVS, 2021 WL 927265, at *3 (C.D. Cal. Mar. 11, 2021) (finding meal and rest period calculations reasonable where defendant analyzed "employment data showing that roughly 61% of the 457,434 shifts were eligible for at least one meal period and that at least 75% were eligible for one rest period").

Finding no factual basis in the Complaint or NOR from which to draw an assumption about how many members of the class were eligible to take breaks, the Court cannot "supply further assumptions of its own." *Harris*, 980 F.3d at 701. "Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." *Jauregui*, 28 F.4th at 996. That is the case here. Defendant's calculation is unreasonable because Defendant did not establish that it was more likely than not that 100% of the class members were eligible for rest breaks or meal breaks every week—not because the Defendant overlooked an obvious alternative. *Cf. Id.* (declining to zero-out a claim for failure to use appropriate minimum wage figures when correct minimum wage numbers were readily available). In sum, without a plausible factual basis, the assertion of 100% percent class participation, or any other proportion the Court might draw without knowledge of the shifts worked by the class, would amount to "speculation" or "assumptions ... pulled from thin air," which the Ninth Circuit has prohibited. *See Ibarra*, 775 F.3d at 1197, 1199. Accordingly, the Court finds Defendant has not met its burden to show that $735,360 is in controversy under the unpaid rest and meal break claims.

### iv. Remaining Claims

In light of the Court's findings above, even if Defendant's calculations regarding the remaining claims (failure to reimburse business expenses, failure to timely pay final wages, failure to provide accurate wage statements, and attorney's fees[1]) are proper, they are insufficient to bring the amount in controversy over the $5,000,000 threshold.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is **GRANTED** and Defendant's Motion to Compel Arbitration is **DENIED** as MOOT. This matter is remanded to the San Bernardino County Superior Court forthwith.

**IT IS SO ORDERED.**

Dated: May 28, 2025

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

---

[1] Defendant argues that the statutory allowance for attorneys' fees will add 25% to the amount in controversy, which Plaintiff argues is unreasonable as a per se fee award without more to justify its reasonableness. *See* Opp'n at 17; Reply at 8. Setting aside whether the 25% fee calculation is appropriate, because the Court finds the underlying assumptions are unreasonable, the resulting attorney fee calculation is unsupported. *Davis*, 2024 WL 1217377 at *7.